[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR JUDGEMENT #101
Before the court is the defendant's, Bridgeport Harbor Master, application for declaratory relief and order to show cause (the Defendant's Application). In the application, the defendant alleges the following facts. On or about August 14, 2000, the defendant discovered that the plaintiff's, Robert Becker, vessel, the Orra, was sinking at Johnson's Creek. The defendant determined that the vessel was abandoned and posed a navigation hazard, and had the vessel taken to a public marina for storage. The defendant consulted with the New England Marine Surveyors, Inc. to inspect and assess the condition of the vessel. New England Marine Surveyors reported that "[t]he vessel is in exceptionally poor condition with obvious structural deficiencies." (Defendant's Application, Exhibit A.) The report also stated that the vessel is ". . . clearly unseaworthy and structurally unsound" and that "there is no value to the vessel. . . ." Id. On September 1, 2000, the defendant, sent a letter to the Commissioner of Environmental Protection, giving notice that the City intended to scrap the vessel "on or after September 11, 2000 unless removed." (Defendant's Application, Exhibit B.)
The plaintiff filed a complaint on September 5, 2000, alleging that the CT Page 2760 vessel was caused to sink when the defendant cut the mooring. The plaintiff further alleges that the defendant towed the vessel to a public marina causing irreparable damage thereto. The plaintiff seeks a temporary restraining order preventing the defendant or his agents from scraping the vessel and mandatory insurance. On September 26, 2000, the defendant filed the present application in which he seeks a declaratory judgment allowing him to scrap the plaintiffs vessel and to recover any and all costs associated therewith. The defendant states that, pursuant to General Statutes § 15-140c, he has a lien on the vessel and its contents to the extent of the costs incurred in removing and inspecting the vessel and in bringing this action. He further seeks a declaration that, pursuant to General Statutes § 15-140c, he cannot be held liable for any damages to the vessel. At the hearing on the defendant's application on October 23, 2000, the defendant testified that the vessel is currently in storage at Captain's Cove Marina accruing storage charges. According to the defendant, as of September 26, 2000, the plaintiff had not removed the vessel.
Pursuant to General Statutes § 15-1, harbor masters are entrusted with the "general care and supervision of the harbors and navigable waterways over which they have jurisdiction, subject to the direction and control of the Commissioner of Transportation, and shall be responsible to the commissioner for the safe and efficient operation of such harbors and navigable waterways in accordance with the provisions of this chapter. . . . [t]he commissioner may delegate any of his powers and duties under this chapter to any harbor masters . . . but shall at all times be vested with the responsibility for the overall supervision of the harbors and navigable waterways of the state." General Statutes § 13b-51 provides in pertinent part, "Harbor masters and deputy harbor masters appointed by the Governor under section 15-1 shall be subject to the direction and control of the commissioner, and shall be responsible to him for the safe and efficient operation of the harbors over which they have jurisdiction." Section 15-7 details the specific duties of the Bridgeport harbor master, including the duty "to prevent or remove any unauthorized encroachment and other obstruction which is likely to interfere with the full navigation of said harbor. . . ." General Statutes § 15-7 (a).
General Statutes § 15-140c, the statute pursuant to which the defendant brings his application, provides in pertinent part, that the harbor master, "(b) . . . upon discovery of any vessel apparently abandoned . . . may take such vessel into his custody and may cause the same to be taken to and stored in a suitable place. . . . All charges necessarily incurred by such officer in the performance of such duty shall be a lien upon such vessel. The owner or keeper of any marina or other place where such vessel is stored shall have a lien upon the same CT Page 2761 for his storage charges and if such vessel has been stored for a period of not less than sixty days, such owner or keeper may sell the same for storage charges owed thereon, provided notice of intent to sell shall be sent to the Commissioner of Environmental Protection, the Commissioner of Motor Vehicles, the Commissioner of Transportation and the owner of such vessel, if known, five days before the sale of such vessel." (Emphasis added.) Section 15-140c (a) further provides, "[A] vessel shall be presumed to be abandoned if left on the waters of this state not moored, anchored or made fast to the shore or unattended for a period greater that twenty-four hours. . . ."
In this case, upon discovering that the plaintiffs vessel was sinking, the defendant made a determination that the vessel posed a navigation hazard and was abandoned. Pursuant to statutory authority granted to the defendant under § 15-140c (b), he took the vessel into his custody and placed it in storage on August 14, 2000. On September 1, 2000, the defendant, through counsel for the City of Bridgeport, sent a letter to the Commissioner of Environmental Protection, providing notice of the City's intent to "scrap" the plaintiffs vessel on or after September 11,2000, citing § 15-140c as authority to do so.[1] A copy of this letter was sent to the plaintiff, the Commissioner of Motor Vehicles, and the Commissioner of Transportation. Under § 15-140c, however, the owner or keeper of the place where an abandoned vessel is stored is only permitted to sell the vessel if it has been in storage for at least sixty days. Even assuming that the plaintiffs vessel was abandoned as defined by § 15-140c (a) and that the City owns the marina where the vessel is currently in storage, as of the September 11, 2000 deadline, set by the defendant, the vessel had only been in storage for twenty eight days, far short of the sixty day requirement. Accordingly, the defendant did not comply with the statutory requirements which would have permitted the defendant to sell the vessel pursuant to § 15-140c.
Accordingly, the defendant Bridgeport Harbor Master's application for declaratory relief and order to show cause seeking judgement is denied. The court shall assign said matter for a hearing in damages in order to ascertain a factual basis for determining the value of the ship in question.
SKOLNICK, J.